UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELLE M. CRAIG,<br>   *Plaintiff*, | )<br>)<br>) |
|    *v.* | )   No:  1:09-cv-0511-JMS-DML<br>) |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>   *Defendant*. | )<br>)<br>) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Michelle M. Craig seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act ("the Act").  For the reasons explained below, the Court **AFFIRMS** the ALJ's denial of benefits.

**PROCEDURAL HISTORY**

Craig filed her application on September 19, 2005, alleging disability beginning on January 28, 2005, due to back, hip and shoulder pain. Craig's application was denied initially and upon reconsideration, whereupon she requested and was granted a hearing before an Administrative Law Judge. A hearing was held on May 23, 2008, at which Craig testified. Also testifying were medical expert Richard A. Hutson, M.D., who is an orthopedic surgeon, and Constance R. Brown, a vocational expert. The ALJ denied Craig's application for benefits on August 21, 2008. The Appeals Council denied review of the ALJ's decision on March 21, 2009, and Craig filed this timely review on April 24, 2009.

## APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning…[and] build an accurate and logical bridge from the evidence to [his] conclusion." *Id.*

## BACKGROUND

Michelle Craig was 35 years old when she filed her application for benefits due to back pain. Craig's disagreement with ALJ's decision centers around what Craig believes are differences or inconsistencies among the medical expert's testimony at her hearing, the hypothetical question posed by the ALJ to the vocational expert, the ALJ's residual functional capacity finding and the vocational expert's response to a post-hearing interrogatory posed by the ALJ.

On May 23, 2008, the medical expert, Dr. Hutson, testified that

> [b]ased upon the problems with her spine and her wrist and her shoulder, Judge, it would be my opinion that she could do no more than sedentary work, lift ten pounds occasionally, and five pounds frequently. **She could sit six hours out of an eight hour day, but she would need to have a sit/stand option. Not to leave the work station. She could stand up to five minutes out of every hour. She could stand or walk two hours out of an eight hour day**. From a postural standpoint I would say no ladders, ropes or scaffolds. But the rest of the postural things could be done on an occasional basis. The hands can be used frequently, but not continuously. Particularly the left hand.

3

[R. 713-14.] (emphasis added)

On May 23, 2008, the ALJ posed two hypothetical questions to the vocational expert:

> ALJ: This individual would be limited as indicated by the testimony of [medical expert] Dr. Hudson [sic]. Do you understand the facts in the hypothetical question? [R. 721.]
> ….
> ALJ: [S]econd hypothetical, assuming that there would be a basis for crediting her testimony that her ability to stand would be no more than five minutes, sit for one hour, walk for about 15 mintues.…[Y]ou got up and moved around a little bit, would you be able to sit down for another hour? And then after the second hour, get up, move around a little bit, and sit down again for a third hour.

[R. 723.]

In her July 23, 2008 response to a post-hearing interrogatory, the vocational expert replied that

> [w]hat I see that concerns me is the maximum duration of sitting (up to 15 minutes at a time), standing (up to 5 minutes stationary) and walking (up to 10 minutes at a time). It would be very difficult to maintain productivity with the need to change positions so often. **A worker needs to be able to sustain at least one half hour in one position in order to maintain productivity if the job so demands**. The FCE[1] does not specifically limit the claimant to part time work, but the necessity of changing positions would have negative consequences for the claimant's ability to maintain work.

[R. 354 (emphasis added).]

In his August 21, 2008 Decision, the ALJ found that

> [t]he claimant has the residual functional capacity to occasionally lift and/or carry 10 pounds; frequently lift and/or carry 5 pounds; stand and/or walk for 2 hours total in an 8 hours workday, does not need an assistive device for ambulation; **sit for a total of 6 hours in an 8 hours workday; needs to change positions without leaving the worksite every hour for about 5 minutes, the 5 minutes need not be consecutive**; and the claimant can push and/or pull to the same extent as she can lift and/or carry.

---

[1] Functional Capacity Evaluation performed on April 8, 2008, *see* R. 244-47.

[R. 36 (emphasis added).]

The ALJ found at step one that Craig had not engaged in substantial employment since her alleged onset date of January 28, 2005. At steps two and three, the ALJ concluded that Craig had "'severe'" (more than minimal) degenerative changes of the lumbar spine and thoracic spine, minimal posterior bulges involving several levels of the lumbar spine, status post radial shortening osteotomy to unload the radius and level the joint and a capitate shortening osteotomy, degenerative joint disease of the hip, and obesity, but the claimant does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

At step four, the ALJ concluded Craig has the residual functional capacity to "stand and/or walk for 2 hours total in an 8 hours workday, does not need an assistive device for ambulation; sit for a total of 6 hours in an 8 hours workday; needs to change positions without leaving the worksite every hour for about 5 minutes, the 5 minutes need not be consecutive…." [R. 36.]

At step five, the ALJ found that Craig was not able to return to any of her past relevant work, but that considering her age, education, work experience and residual functional capacity, who was capable of performing a significant number of jobs in the national economy, including new accounts clerk and call out investigating clerk. Therefore, the ALJ determined that Craig was not disabled.

## DISCUSSION

Craig advances several objections to the ALJ's decision, each of which is addressed below.

    **A.**     **The ALJ's Hypothetical Question to the Vocational Expert**

Craig argues that a hypothetical question posed by the ALJ to the vocational expert was incomplete and thus inaccurate. The ALJ's hypothetical question to the vocational expert incorporated the exact wording of the medical expert's testimony, by reference. [R. 721.] The medical expert testified that Craig "could sit six hours out of an eight hour day, but she would need to have a sit/stand option. Not to leave the work station. **She could stand up to five minutes out of every hour**." [R. 714.]

In his residual functional capacity finding, the ALJ found that Craig "needs to change positions without leaving the worksite every hour for about 5 minutes, **the 5 minutes need not be consecutive**." [R. 36.] It is this additional comment by the ALJ—the 5 minutes need not be consecutive—that troubles Craig. The essence of Craig's argument is that the hypothetical question did not include the "key limitation" that the minutes need not be consecutive, and thus was an incomplete question. [Claimant's Br. 7.]

An ALJ's hypothetical question to a vocational expert "must include all limitations supported by medical evidence in the record." *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (internal citation omitted).

Craig is mistaken in her characterization of the ALJ's comment as a "limitation," [Claimant's Br. 7], or a "restriction," [Claimant's Reply Br. 3.] A plain reading of the words "need not be consecutive" means that the minutes may, but do not have to be, consecutive. Every possible use of the five minutes remains under the ALJ's residual functional capacity finding, just as it did under the medical expert's testimony. There is then, no difference in meaning between the language in the residual functional capacity finding and the language in the medical expert's testimony, as incorporated by the ALJ in his hypothetical question. The ALJ's

hypothetical question was not incomplete, as the ALJ imposed no additional limitation in his residual functional capacity beyond those imposed by the medical expert in his testimony.

Craig also argues that the ALJ's residual functional capacity assessment is inconsistent with a limitation stated by the vocational expert in her response to a post-hearing interrogatory. The vocational expert stated that "[a] worker needs to be able to sustain at least one half hour in one position in order to maintain productivity if the job so demands." [R. 354.] Craig argues that the ALJ's finding that she needs to change positions every hour for about 5 minutes, the 5 minutes need not be consecutive, *precludes* her from being able to satisfy this thirty minute requirement, presumably because she might need to take short breaks more than once every thirty minutes, with those short breaks adding up to five minutes per hour. [Claimant's Br. 7 (emphasis added).]

An ALJ is not "required to accept or permitted to accept medical evidence if it is refuted by other evidence." *Briscoe v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) (internal citation omitted). In this case, Craig's argument overlooks her own hearing testimony, which refutes any suggestion that she cannot comply with the requirements stated by the vocational expert. Craig twice testified that she was able to sit for one hour.

> CLMT: I have a hard time standing for more than five minutes at a time. **I can't sit down for more than an hour at a time**. I can't walk for more than 15 minutes.
>
> ALJ: What happens if you sit for more than an hour?
>
> CLMT: I, I have arthritis and, and I get really stiff. [R. 703.] (emphasis added)
>
> ….
>
> ALJ: The claimant has, second hypothetical, assuming that there would be a basis for crediting her testimony that her ability to stand would be no more than five minutes, sit for one hour, walk for about 15 minutes.

7

> ALJ: Would you be able, ma'am, in your opinion to, to maintain the sitting after you changed position after an hour continuously for an eight hour day?
>
> CLMT: Yes.
>
> ALJ: I don't know if you understood me. If you --
>
> CLMT: Okay.
>
> ALJ: If you sat for an hour --
>
> CLMT: Yes.
>
> ALJ: -- you got up and moved around a little bit, would you be able to sit down for another hour? And then after the second hour, get up, move around a little bit, and sit down again for a third hour. That's what I was asking you.
>
> CLMT: Possibly, yes.

[R. 723.]

As the meaning of the ALJ's residual functional capacity finding does not differ from the medical expert's testimony, Craig's argument that the hypothetical question was incomplete fails. There was no error. In addition, as Craig testified that she can sit for one hour, any error would have been harmless, as Craig's self-described ability demonstrates that she can satisfy the vocational expert's requirement of being able to sit for one-half hour.

### B.  ALJ's Finding Regarding Craig's Need to Alternate Positions

Craig argues that the ALJ's findings are irreconcilable and thus unreviewable. The Court disagrees; the ALJ's findings are not irreconcilable.

In Finding No. 5, the ALJ says that "The claimant has the residual functional capacity to ... stand and/or walk for 2 hours total in an 8 hours workday, does not need an assistive device for ambulation; sit for a total of 6 hours in an 8 hours workday; needs to change positions

without leaving the worksite every hour for about 5 minutes, the 5 minutes need not be consecutive." [R. 36.]

According to Craig's characterization and arithmetic, on the one hand the ALJ said that Craig "needed" to sit for a total of seven hours and twenty minutes (calculated as 55 minutes per hour x 8 hours per workday) and stand for a total of forty minutes (calculated as 5 minutes per hour x 8 hours per workday), while on the other hand, the ALJ said that Craig could sit for a total of six hours and stand/or walk for a total of two hours.

Craig is incorrect. The ALJ did not find that Craig *needed* to sit 55 minutes each hour for *eight* hours. Rather, the ALJ found that Craig *could* sit for *six* hours out of the *eight* hour workday, with the sit/stand option of standing up for up to five minutes per hour while remaining at her workstation. Craig's analysis assumes that she would be required to work straight through an eight-hour day with no break of any kind — no lunch and no morning and afternoon breaks. Social Security Ruling (SSR) 96-9p[2] anticipates that a morning break, a lunch period and an afternoon break will be factored into the amount of time a claimant can sit while doing sedentary work. When these breaks are taken into account, the two findings are not irreconcilable. An example follows:

|  | Sit (Working) | Stand/walk/sit as chosen (Break) |
|---|---|---|
| 9 – 10 am | 55 | 5 |
| 10 –11 am | 42 | 18 |
| 11 –12 am | 55 | 5 |
| 12 – 1 pm | 0 | 60 |
| 1 – 2 pm | 55 | 5 |
| 2 – 3 pm | 55 | 5 |
| 3 – 4 pm | 43 | 17 |

---

[2]SSR 96-9p Policy Interpretation Ruling – Titles II and XVI: Determining Capability to do Other Work – Implications of a Residual Functional Capacity for less than a Full Range of Sedentary Work.

9

| | | |
|---|---|---|
| 4 – 5 pm | 55 | 5 |
| TOTAL TOTAL MINUTES | 360 | 120 |
| TOTAL HOURS | 6 hours | 2 hours |
| **TOTAL WORKDAY 8 hours** | | |

Craig next argues that the ALJ's decision is unreviewable as the ALJ did not comply with SSR 96-9p. Craig interprets SSR 96-9p as requiring the ALJ to specify how long a claimant may sit in an uninterrupted position in cases, like Craig's, where the claimant cannot sit for an uninterrupted interval of two hours. Craig has misinterpreted the language she cites. SSR 96-9p states that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." In his residual functional capacity assessment, the ALJ specified that Craig can "sit for a total of 6 hours in an 8 hours workday; needs to change positions without leaving the worksite every hour for about 5 minutes, the 5 minutes need not be consecutive." [R. 36.] As the ALJ was specific as to the frequency of Craig's need to alternate sitting and standing—every hour for about 5 minutes—the ALJ has satisfied the requirements of SSR 96-9p.

### C. ALJ's Compliance with SSR 00-4p

Finally, Craig argues that the ALJ failed to comply with SSR 00-4p when he neglected an affirmative duty to ask the vocational expert if her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Craig is correct; the ALJ did neglect this duty, and this was an error. *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009). This error is harmless, however, unless there was an actual conflict. *Id.*

Assuming the ALJ had asked about the DOT and a conflict been revealed, SSR 00-4p would have then required that the ALJ elicit a reasonable explanation for the conflict before relying on the vocational expert evidence. SSR 00-4p.

10

The question then becomes whether there was an unresolved conflict about which the ALJ should have, but did not, inquire. Craig argues that a conflict exists in that the medical expert said that Craig needed a sit/stand option, and the vocational expert based her testimony about Craig's ability to do, at least, two jobs on this testimony. The DOT, however, does not incorporate a sit/stand option into its classifications, hence the conflict.

The Seventh Circuit recently considered a claim like Craig's and found that there was no conflict, hence the ALJ's error was harmless. *Williams-Overstreet v. Astrue*, No. 09-1742, 2010 U.S. App. Lexis 2604, at *8 (7th Cir. Feb. 8, 2010).

> The record shows that the ALJ's question did not require the worker to alternate every *between* sitting and standing: the context of the question establishes that the ALJ was referring to hourly breaks *from* sitting *or* standing. **The ALJ, in fact, clarified for the vocational expert that the worker would be able to stand or walk for two hours and sit for six hours in an eight-hour day.** R. 885. **The vocational expert then testified that if the worker could "take a short break after an hour," the worker could perform [the claimant's] sedentary and past relevant work**…. Because that testimony is compatible with the DOT's description of sedentary work, see *Terry, 580 F.3d at 478*, and because the DOT's description did not conflict with the limitations imposed by the ALJ in his hypothetical question, see *Ketelboeter v. Astrue,* 550 F.3d 620, 625-26 (7th Cir. 2008), the ALJ's failure to ask was a harmless error.

*Williams-Overstreet,* 2010 U.S. App. Lexis 2604, at *8-9 (italicized emphasis in original; bold emphasis added).

The hypothetical limitations imposed by the ALJ in *Williams-Overstreet* are just like those imposed by the ALJ in this matter. By reference to the medical expert's testimony, the ALJ's hypothetical included the limitation, "[s]he could sit six hours out of an eight hour day, but she would need to have a sit/stand option. Not to leave the work station. She could stand up

11

to five minutes out of every hour. She could stand or walk two hours out of an eight hour day."
[R. 714, 721.]

With no conflict between the vocational expert evidence and the DOT requirements, the ALJ's error in failing to ask the vocational expert if her testimony was consistent with the DOT was harmless.

Alternatively, SSR 00-4p considers it a reasonable explanation for an apparent conflict with the DOT when the vocational expert relies on other reliable information not listed in the DOT. SSR 00-4p ("Information about a particular job's requirements or about occupations not listed in the DOT may be available in ***other reliable publications***, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling."). *See also Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) (finding that an ALJ is free to accept testimony from a vocational expert that conflicts with the DOT when the contrary testimony is based on information in "other reliable publications").

In this case, the vocational expert relied on information from the State Occupational Employment and Wage Estimates (2006), published by the Bureau of Labor Statistics. [R. 722.] The U.S. Social Security Administration will take administrative notice of reliable job information from various governmental publications, including, for example:

   (1) Dictionary of Occupational Titles, published by the Department of Labor;
   (2) County Business Patterns, published by the Bureau of the Census;
   (3) Census Reports, also published by the Bureau of the Census;
   (4) Occupational Analyses prepared for the Social Security Administration by various State employment agencies; and
   (5) Occupational Outlook Handbook, published by the Bureau of Labor Statistics.

20 C.F.R. § 416.966(d) (1)-(5) (emphasis added).

The Court accepts the State Occupational Employment and Wage Estimates as a reliable publication. Accordingly. The ALJ's reliance on it satisfies the reasonable explanation

12

requirement of SSR 00-4p. The ALJ did not err in relying on the testimony of the vocational expert.

## CONCLUSION

For the reasons discussed at length above, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 08/12/2010

*Jane Magnus-Stinson*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

J. Frank Hanley II
laurasiener@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov